IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSE HOUSTON, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | NO. 05-CV-372-LDD |
| Defendants. | : | |

**Davis, J.**                                                                                   **May 31, 2007**

### MEMORANDUM & ORDER

Presently before the Court are Defendant's Motion for Summary Judgment (Doc. No. 35) and Plaintiffs' Response in Opposition to Defendant's Motion (Doc. No. 37).  For the reasons that follow, Defendant's Motion is GRANTED.

### FACTUAL AND PROCEDURAL HISTORY[1]

At approximately 1:30 a.m. on March 18, 2003, Plaintiffs Jesse and Jason Houston, along with their brother George and a friend Scott Bramble, left a local bar en route to the home Plaintiffs' mother, Roberta Houston.[2]  As the group approached the 6400 block of Woodland Avenue in the southwest section of Philadelphia, Pennsylvania they observed a group of three

---

[1]The facts stated in this Memorandum are derived from the depositions of Plaintiffs Jesse and Jason Houston, their mother Roberta Houston, Defendant Lieutenant Robert Humes (retired), and Officer William Bonner.  Unless noted specifically, the material facts are undisputed.  Where a factual dispute is identified, Plaintiffs' version of the facts is accepted as true for purposes of resolving this Motion.

[2]The group had been celebrating Jason Houston's birthday.  By all indications, George Houston was heavily intoxicated.  Jesse Houston Dep., at 18; Roberta Houston Dep., at 38; Humes Dep., at 52.  Jason admits to consuming at least nine beers through the night. Jason Houston Dep., at 13, 18.  Jesse Houston, who was driving, was not drinking and it is unclear from the record whether Scott Bramble was inebriated.

males, John McCloy, Stephen Jones, and Siubal Moya, standing on the sidewalk near Roberta Houston's home.  Jesse Houston admits that there was some degree of acrimony among the groups relating to a prior altercation in which the Houstons' friend, Danny Noble, allegedly shot McCloy.  Jesse Houston Dep., at 21-22.  McCloy, Jones and Moya were scheduled to testify in criminal court regarding this shooting on the same day that the facts giving rise to the instant litigation occurred.

Upon observing the group standing near their mother's home, Jesse and Jason Houston along with Bramble exited the car and it is undisputed that they engaged in some sort of altercation with McCloy, Jones and Moya.  Plaintiffs contend that it was a verbal confrontation.  Jesse Houston admits, "me and Steven [Jones], we had words....[W]hen I came up to him, he put his hands up like he wanted to fight....[A]nd when I went towards him, he ran around the car where my brother Jason got out of the car, and them two met."  Jesse Houston Dep., at 26-27.  At that point, Jason Houston and Jones were "in the middle of the street...having words."  Id. at 30.  Describing the entire event, Jesse further states that "[t]here was yelling" and "a lot of commotion."  Id. at 32-33.  Jason Houston agrees that words were exchanged among the groups, but contends that the McCloy group was yelling.  Jason Houston Dep., at 29.  Both Plaintiffs, however, assert that there was no physical altercation.[3]  Id. at 52; Jesse Houston Dep., at 33.

This incident occurred just outside of Roberta Houston's home which is located directly across the street from the 12th District Headquarters of the Philadelphia Police Department.  As

---

[3]It should also be noted that Plaintiffs' deposition testimony is inconsistent with the factual averments in the Complaint.  See Comp. ¶8 (stating "[Plaintiffs] were attacked by three individuals at 6448 Woodland Avenue close to their home and right in front of the 12th District.").  Notwithstanding this inconsistency, for purposes of resolving this Motion, the Court will accept the version of events proffered by Plaintiffs in their deposition testimony.

this confrontation occurred, Lieutenant Robert Humes[4] exited the 12th District to smoke a cigarette.  The incident he alleges to have observed differs significantly from the events Plaintiffs describe.  Lt. Humes testified in his deposition that he observed at least three individuals engaged in a fist fight.  Lt. Humes states that Jason Houston and Moya were punching each other in the face, and that an unidentified white male was standing on the periphery punching Jason Houston. Humes Dep., at 15-16.  Other members of the respective groups were standing near the fight but were not observed throwing punches at that time.  Id. at 24.  Lt. Humes testified that he heard Jason Houston yelling that he was going to kill Moya and Lt. Humes generally describes this event as a "brawl" and a "melee in front of my district."  Id. at 17-18.

Lt. Humes then verbally ordered the individuals to stop fighting.  According to Lt. Humes, Jason Houston and Moya refused to heed his instructions and continued punching each other.  Id. at 18.  The other members of the group who were not directly involved with the fight stepped back a short distance.  Id.  Lt. Humes next yelled through the window of the police station for assistance and attempted to take Jason Houston to the ground.  Id. at 19.  Sergeant Harvey Douglas, who responded to Lt. Humes's request for assistance, grabbed Moya and took him to the ground.  Id.  Lt. Humes alleges that Jason Houston "totally resisted any action I took on him to try to get him to the ground...He pushed. He kicked. He scuffled. He tried to get away." Id.  Lt. Humes was able to get Jason Houston to the ground and place one handcuff on his wrist. Id. at 26.  Jason Houston continued to resist and Lt. Humes radioed for further assistance.  Id. Other officers arrived, "almost immediately" and an unidentified patrol officer helped Lt. Humes

---

[4]In both parties' briefs and in several depositions, Defendant's name is spelled incorrectly as "Hume."  The Use of Force Report completed and signed by Defendant makes clear that his last name is actually Humes.  Def.'s Ex. L.

roll Jason Houston onto his stomach and secure his other wrist in the handcuffs.  Id. at 27, 31.

Lt. Humes admits using "control holds" to subdue Jason Houston, but denies that he or any other

officer ever struck Jason Houston.  Id. at 36; see also Lt. Humes's Use of Force Form, Def.'s Ex.

L.

Lt. Humes then began an initial on-scene investigation to determine the details

surrounding this altercation.  McCloy, Jones and Moya informed Lt. Humes that they had been

attacked by Jason and Jesse Houston in an effort to influence their testimony later that day

regarding the Noble-McCloy shooting.  Id. at 40.  They also informed Lt. Humes that during the

course of this fistfight, Jesse and Jason Houston stole a cellular phone belonging to McCloy.[5]  Id.

at 40, 44-45.   Based on this information, Lt. Humes ordered other officers to also place Jesse and

George Houston under arrest.  Id. at 45-46.  All three Houston brothers were transferred to the

hospital by Officer William Bonner and his partner, Howard Lee.  Bonner Dep., at 17.  Jesse and

Jason were treated for minor abrasions and bruises, and released shortly thereafter.[6]  Jesse

Houston Dep., at 55; Jason Houston Medical Report, Pltfs.' Ex. 8. The Houston brothers were

then taken to the police station where Jesse and Jason refused to make a statement.  George

Houston made a statement to Detective Alan Fried indicating that he was asleep in the car and

---

[5]Plaintiffs do not dispute that McCloy's cellular phone was later recovered from Jason Houston's pocket.  Plaintiffs' Answer to Defendant's Statement of Uncontested Facts ¶ 54.

[6]It is unclear what medical treatment, if any, George Houston received. Officer Bonner stated that he observed no physical injuries and that George Houston was taken to the hospital as a precautionary measure because he was highly intoxicated. Bonner Dep., at 29; see also Humes Dep., at 52.

not involved with the incident.  Investigation Report, Pltfs.' Ex. 1.[7]

McCloy, Jones and Moya were also transferred to the police station where they made individual statements to Det. Fried.  See id.  They each again stated that Jesse and Jason Houston exited the car and confronted the group threatening them not to testify regarding the Noble-McCloy shooting.  Id.  According to the statements, an altercation then ensued during which McCloy's cellular phone was knocked from his hands and retrieved by Jason Houston.  Id.  Jason Houston then began fighting with Moya after Moya attempted to recover the cell phone.  Id.  McCloy and Moya also stated that Jesse Houston struck McCloy in the head with a bottle which in turn initiated a fistfight among those two.  Id.  Jones stated that neither he nor George Houston were involved with the fight.  Id.

George Houston was released without being criminally charged and he is not a party to this litigation.  Jesse and Jason Houston were charged later that day with robbery, aggravated assault, intimidation and other charges.  Criminal Complaint, Def.'s Ex. M.  These charges were dismissed on January 14, 2005.

Plaintiffs, along with their mother, again tell a vastly different story of what occurred after the police arrived on the scene.  Jesse Houston stated that as officers exited the 12th District headquarters they ordered him to the ground, and that he immediately complied with these instructions.  Jesse Houston Dep., at 34.  While prone, an officer kicked him in the torso several times as another officer held him down by placing a knee against the back of Jesse Houston's neck.  Id. at 40-43.  Jesse Houston was then placed in handcuffs.  Id. at 47.

---

[7]Lt. Humes and Officer Bonner each testified that after being detained, both Plaintiffs verbally abused the officers; this abuse included the use of racial epithets and threats to the officers' physical safety.  Humes Dep., at 56-57; Bonner Dep., at 19.

Roberta Houston testified in deposition that on the night of this incident she awoke to the sound of people screaming in the street outside of her apartment.  Roberta Houston Dep., at 12. She went to the window and noticed an individual lying face down, handcuffed surrounded by several officers who were simultaneously punching and kicking the individual.  Id. at 19-20.  She opened the window and screamed "police brutality" several times which caused the officers to cease their assault.  Id. at 21.  She then realized that the handcuffed individual was her son Jesse and she exited the apartment to investigate the situation.  Id.

Jason Houston testified that he observed the officers on the scene grab his brother and throw him against a car.  Jason Houston Dep., at 33-34. The officers then handcuffed Jason punched him in the face "more than ten times," forced him to the ground and kicked him "over ten times."  Id. at 41-42.  According to Jason Houston, "they made sure we was in cuffs first." Id. at 37.  The assault ended when his mother came out into the street.  Id. at 47.

Plaintiffs filed individual Complaints which were consolidated into one action on March 31, 2006.  The Complaints assert claims pursuant to 42 U.S.C. § 1983 against the City of Philadelphia, Lt. Humes, Det. Fried, Off. Bonner and six unnamed officers of the Philadelphia Police Department alleging that these Defendants violated rights protected by the Fourth Amendment to the United States Constitution.  Plaintiffs have withdrawn all claims against the City of Philadelphia, Detective Fried (Doc. No. 34) and Officer Bonner (Pltfs.' Resp. n.1, Doc. No. 37). The Court denied Plaintiffs' Motion for Leave to File an Amended Complaint naming the John Doe officers because it was not timely filed. (Doc. No. 31)  Accordingly, Lt. Humes is the only remaining Defendant.  Plaintiff Jason Houston seeks to proceed to trial on the claims of unlawful arrest, malicious prosecution and excessive force.  See Pltfs.' Resp. n.1, Doc. No. 37.

6

Plaintiff Jesse Houston seeks to proceed on claims of unlawful arrest and malicious prosecution but not excessive force because he cannot identify the officers who allegedly struck him. Defendant moves for summary judgment on all claims.  Id.  For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. No. 35) is granted.

## DISCUSSION

I.      Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party.  Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v. Lukens Steel Co., 793 F.2d 509, 511 (3d Cir. 1986).  The moving party has the burden of demonstrating the absence of any genuine issue of material fact which "may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  After a defendant properly supports the motion for summary judgment, the "plaintiff must produce affirmative evidence," which "must amount to more than a mere scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (citations omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (finding that a plaintiff must present competent evidence from which a jury could reasonably find in his favor); J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909

F.2d 1524, 1531 (3d Cir. 1990) (holding that after the movant's burden is met, the non-movant must establish the existence of each element on which it bears the burden of proof).

II.    Unlawful Arrest

In order to prevail on a Section 1983 claim alleging unlawful arrest, Plaintiffs must establish that Lt. Humes lacked probable cause to effectuate the arrest.  Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972); Rogers v. Powell, 120 F.3d 446, 452 (3d Cir. 1997); Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).   Probable cause exists where the facts and circumstances within the officer's knowledge at the time of arrest are sufficient to warrant a reasonable, prudent and honest person in believing that a criminal offense has been or is being committed.  Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002); Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).  The Court must look to the totality of the circumstances and use common sense in order to determine whether Lt. Humes had probable cause to arrest Plaintiffs.  U.S. v. Veal, 453 F.3d 164, 167-68 (3d Cir. 2006); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).  Though factual disputes often preclude probable cause determinations at the summary judgment stage, "the question is for the jury only if there is sufficient evidence whereby a jury could find the police officers did not have probable cause to arrest."  Sharrar, 128 F.3d at 818 (citing Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir. 1984)).   The fact that the criminal charges against Jason and Jesse Houston were ultimately dismissed is irrelevant to the determination of whether probable cause existed to effectuate a lawful arrest.  Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).  For the purpose of resolving this Motion, the Court will accept Plaintiffs' version of the facts and will determine whether a reasonable officer viewing the incident would believe that a

8

crime had been or was being committed.

By Plaintiffs' own admission, Lt. Humes observed a dispute among six or seven males in which there was "yelling," "a lot of commotion," and one individual "put his hands up like he wanted to fight."  Jesse Houston Dep., at 26-26, 32-33.  This occurred at 1:30 a.m., in the middle of a busy Philadelphia street, within feet of the police station.  Id.  It is clear that these facts are sufficient to cause a reasonable officer to believe that a crime was being committed; at that point Lt. Humes had probable cause to arrest Jason Houston.[8]

Lt. Humes then performed an initial investigation in which McCloy, Jones and Moya stated that Plaintiffs assaulted them in order to influence their testimony with regard to the Noble-McCloy shooting and robbed McCloy of his cell phone.  Based on this information, Lt. Humes directed other officers to place Jesse Houston under arrest.[9]  This arrest was also amply

---

[8]Pursuant to Pennsylvania law, "a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. C.S.A. § 5503. An officer who observes a developing fist fight at 1:30 a.m. involving a group of individuals yelling and causing a commotion has probable cause to believe that the crime of disorderly conduct had been committed.  Com. v. Clark, 761 A.2d 190, 191 (Pa. Super. 2000) (valid disorderly conduct arrest where officer observed defendant in the crosswalk screaming profanity at 2:00 a.m.); see also Com. v. Fedorek, 913 A.2d 893, 900 (Pa. Super. 2006) (goading a fight sufficient for summary disorderly conduct conviction); Com v. Gilbert, 674 A.2d 284, 287 (Pa. Super. 1996). The fact that Jason Houston was charged with more serious crimes but not disorderly conduct is not relevant to the determination of initial probable cause. See In re R.P., 918 A.2d 115, 121 (Pa. Super. 2007) (finding probable cause for disorderly conduct arrest of juvenile involved in fight who was yelling and refused to follow officers' lawful instructions).

[9]In his deposition, Jesse Houston testified that officers approached him immediately after exiting the police station presumably without receiving arrest orders from Lt. Humes.  Even under this version of the facts, Lt. Humes is entitled to summary judgment because Jesse Houston would be unable to establish Lt. Humes's personal involvement in the arrest.  See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 696-95 (1978); Rode v.

supported by probable cause.  "When a police officer has received a reliable identification by a

victim of his or her attacker, the police have probable cause to arrest."  <u>Sharrar</u>, 128 F.3d at 818;

<u>see also</u> <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a

police officer to base his belief in probable cause on a victim's reliable identification of his

attacker.").

 Plaintiffs challenge the reliability of the statements[10] by McCloy, Jones and Moya

identifying Plaintiffs as the aggressors because McCloy had a criminal history which was known

to officers on the scene.  As a preliminary matter, undisputed evidence indicates that Lt. Humes

knew nothing of McCloy's criminal history and had no reason to question his reliability.[11]  <u>See</u>

Humes Dep., at 22-23.  Additionally, an officer need not conduct an exhaustive investigation into

the credibility of an alleged victim prior to relying on that person's statement.  <u>See</u> <u>Sharrar</u>, 128

F.3d at 818.  Nor must the complainant's veracity stand beyond reproach.  <u>Id.</u> (holding that police

could rely on victim's identification even where victim previously identified someone else as

attacker; <u>Leporace v. City of Philadelphia</u>, Civ. No. 96-6363, 1998 WL 309865, at *4 (E.D. Pa.

June 9, 1998) (finding that probable cause existed for arrest based on statement of apparent

victim even where seemingly disinterested bystanders discredited victim); <u>see also</u> <u>Wilson v.

Russo</u>, 212 F.3d 781, 791-92 (3d Cir. 2000).  Rather, the victim must appear reasonably reliable

---

<u>Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)

 [10]Plaintiffs do not challenge Humes' testimony as to the content of the post-incident
statements made by McCloy, Jones and Moya.  Thus, for purposes of resolving this summary
judgment motion, the content of the information related to Humes is not in dispute.

 [11]Lt. Humes had transferred from another police district just weeks before this incident.
Humes Dep., at 7.

based on the person's demeanor and the facts contemporaneously known to the officer at the scene.  See Beck, 379 U.S. at 91 (requiring "reasonably trustworthy information" of criminal conduct to establish probable cause).  Lt. Humes had no reason to discredit the consistent statements tendered by McCloy, Jones and Moya and these statements, along with Lt. Humes's observations, provided the requisite probable cause to order Jesse Houston placed under arrest. This information also established adequate probable cause to support Lt. Humes's decision to maintain Jason Houston in custody and transport him to Detective Fried for further investigation. Defendant's Motion for Summary judgment is therefore granted with respect to Plaintiffs' unlawful arrest claims.

      III.    <u>Malicious Prosecution</u>

      In order to prevail on a claim of malicious prosecution, Plaintiffs must establish (1) that Lt. Humes initiated criminal proceedings; (2) the criminal case ended in Plaintiffs' favor; (3) Lt. Humes acted without probable cause; (4) maliciously or for a purpose other than bringing Plaintiffs to justice; and (5) Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  <u>Johnson v. Knorr</u>, 477 F.3d 75, 82 (2007) (citing <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003)).  Plaintiffs cannot produce evidence sufficient to satisfy three of the elements of a malicious prosecution claim and therefore summary judgment must be entered in favor of Defendant on this claim as well.

      First, a prosecutor rather than a police officer initiates a criminal prosecution.  <u>O'Connor v. City of Philadelphia</u>, Civ. No. 05-2879, 2006 WL 1490134, at *7-8 (E.D. Pa. May 16, 2006); <u>Stango v. Rodden</u>, Civ. No. 00-5709, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001); <u>Harris v. City of Philadelphia</u>, Civ. No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998)

(citing <u>Albright v. Oliver</u>, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring);  Restatement

2d Torts § 653, cmt. g).  A police officer is only liable for malicious prosecution when he

knowingly provides false information or otherwise prevents a prosecutor from making an

informed decision on whether to proceed with formal charges.  <u>Id.</u>  In this case, there is no

evidence to suggest that Lt. Humes knowingly provided false information or intentionally

withheld facts in an effort to influence the prosecutor's decision.  Even accepting that Lt. Humes

observed a verbal rather than physical altercation, it was McCloy, Jones, and Moya who provided

the factual allegations underlying the criminal charges.  <u>See</u> Criminal Complaints, Def.'s Ex.

M.[12]   Additionally, Lt. Humes is at least two steps removed from the prosecutor's decision to

proceed with criminal charges.  Lt. Humes provided a statement to Detective Fried who then

made the independent determination to bring this case before the prosecutor for possible criminal

charges.  <u>See</u> <u>Garcia v. Micewski</u>, Civ. No. 97-5379, 1998 WL 547246, at *9 (E.D. Pa. Aug. 24,

1998) ("[W]here a police officer presents all relevant probable cause evidence to an intermediary,

such as a prosecutor, the intermediary's independent decision to seek a warrant, or to return an

indictment breaks the causal chain and insulates the officer from a section 1983 claim.")

(citations omitted).

      Second, as stated above, Lt. Humes's observations and the initial statements of McCloy,

Jones and Moya alleging assault, intimidation and robbery provided the requisite probable cause

to support Lt. Humes's decision to arrest Plaintiffs and transport them to Detective Fried for

further investigation.

      Finally, Plaintiffs have produced no evidence indicating that Lt. Humes's arrest was

---

[12]Notably, Lt. Humes is not even mentioned in the criminal complaints.

motivated by malice rather than an honest attempt to serve the ends of justice.  He did not know any of the parties involved with this altercation and had no identifiable animus against Plaintiffs. Humes Dep., at 22-23.

Accordingly, Defendant's Motion for Summary Judgment is granted with respect to Plaintiffs' malicious prosecution claims.

IV.  <u>Excessive Force</u>

Constitutional claims alleging use of excessive force during the course of an arrest are analyzed under the Fourth Amendment to determine whether the "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  <u>Graham v. Conner</u>, 490 U.S. 386, 397 (1989).  Along with assessing the nature and amount of force actually utilized, this Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others and whether he is resisting arrest or attempting to evade arrest by flight."  <u>Id.</u> at 396.  "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  <u>Sharrar</u>, 128 F.3d at 822; <u>see also</u> <u>Morais v. City of Philadelphia</u>, Civ. No. 06-0582, 2007 WL 853811, at *5 (E.D. Pa. Mar. 19, 2007).

It is also true, however, that there can be no § 1983 liability against an unnamed officer and that Plaintiffs must establish Lt. Humes's personal involvement in the alleged constitutional violation.  <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 696-95 (1978); <u>Rode</u>

13

v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988);  Glass v. City of Philadelphia, 455 F. Supp.

2d. 302, 367 (E.D. Pa. 2006).  In this case, Jason Houston claims that he was handcuffed,

punched in the face ten times, forced to the ground, then kicked ten times. Jason Houston Dep.,

at 41-42.  Despite this alleged misconduct, Jason Houston cannot identify the officers who

committed the assault.  Id. at 36, 81-83.[13]  Indeed, Jason Houston actually testified that Lt.

Humes, who he knows "from that night and other nights," id. at 81, arrived on the scene after his

arrest and was not involved with the altercation.  Id.[14][15]  Furthermore, neither Jesse nor Roberta

Houston witnessed the alleged assault on Jason and therefore could not identify the alleged

perpetrator. Jesse Houston Dep., at 37; Roberta Houston Dep., at 27.  Approximately twenty

officers from two different police districts responded to the scene.  Because Jason Houston is

unable to adduce any evidence indicating that Lt. Humes was the officer who committed the

assault, he cannot prevail on his excessive force claim.

---

[13]Jason Houston's statement that Lt. Humes "could have been," id. at 83-84 one of the
officers committing the assault, does not constitute competent evidence and, as a result, fails to
create a material issue of fact as to Humes's potential liability.  This statement addresses
hypothetical possibilities and fails to offer the witness's personal observations as required by
Fed. R. Civ. P. 602.  Thus, this statement of conjecture is not "capable of being admissible at
trial," Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1234 n.9
(3d Cir. 1993) and cannot defeat the instant motion for summary judgment, Philbin v. Trans
Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996).

[14]Jason Houston states that he included Lt. Humes in the present action because "he was
there that night." Id. at 83.

[15]In his deposition, Jason Houston also identified Det. Fried as one of the officers who
struck him.  Id. at 84-85.  Undisputed evidence indicates, however, that Detective Fried was in
the Southwest Detectives Office during Plaintiffs' arrests.  Further, the Court notes that
Plaintiffs' inability to identify Lt. Humes comes despite the fact that he was the only officer
wearing a white shirt while all of the other responding officers were wearing blue patrol
uniforms. See id. at 89.

Accordingly, Defendant's Motion for Summary Judgment is granted with respect to Plaintiff Jason Houston's excessive force claim.

V.  Qualified Immunity

Lt. Humes also asserts that even if his conduct ran afoul of the constitution, he is shielded from liability by the qualified immunity doctrine.  Pursuant to this doctrine, an officer performing discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982).  This doctrine is intended to preclude liability when an officer makes a reasonable but mistaken judgment so that "officials should not err always on the side of caution because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Davis v. Scherer, 468 U.S. 183, 196 (1984)); see also Orsatti, 71 F.3d at 484.  This immunity defense "protects all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In order to determine whether an officer is immune, a two-step inquiry is required.  The Court must first determine whether the Defendant's conduct violated constitutional or statutory law.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).  If no "violation could be made out on a favorable view of [Plaintiffs'] submissions," there is "no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Only where a violation is identified must the Court determine whether the right was "clearly established" Id.

As described in detail above, Lt. Humes's personal observation of a disturbance in the street and the statements of McCloy, Jones and Moya provided sufficient probable cause to

15

support Lt. Humes's decision to arrest Plaintiffs.  Further, Plaintiffs have failed to produce

evidence sufficient to satisfy three elements of a malicious prosecution cause of action.  Finally,

neither Plaintiffs nor their witnesses are able to identify Lt. Humes as the officer who allegedly

assaulted Jason Houston.  Because the facts on record even when viewed in the light most

favorable to Plaintiffs fail to establish a constitutional violation, summary judgment must be

granted in favor of Lt. Humes and it is unnecessary for the Court to determine whether the

protections of the qualified immunity doctrine apply.  See id.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 35)

is GRANTED and the claims asserted in this action are hereby dismissed with prejudice.  An

appropriate Order follows.

16